

# THE ATTORNEY GENERAL

## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

March 19, 1964

Honorable George Beto
Director
Texas Department of Corrections
Huntsville, Texas

Opinion No. C-229

Re: Riparian Water Rights
of the Department of
Corrections on Oyster
Creek, Fort Bend Coun-
ty, Texas.

Dear Dr. Beto:

Your recent letter requested the opinion of this of-
fice on the question of whether the Department of Correc-
tions has riparian rights on Oyster Creek on the Harlem
and Central Prison Farms in Fort Bend County. From other
correspondence and from discussion with your assistant
director of agriculture, we believe that a complete answer
will require examination of the following specific ques-
tions:

    (1)  Does the right to irrigate approximately
400 acres from Oyster Creek exist as a
riparian right in the aforementioned Prison
Farms?

    (2)  If the right to irrigate generally is not
a riparian right possessed by these farms,
can this irrigation be construed as a
"domestic use" since the 400 acres is vege-
table crops to be consumed by the inmates
on the farms?

We have examined the record title to the Harlem and
Central Farm properties, including the easement grants to
Sugarland Industries on December 10, 1929, and to the
Brazos Valley Irrigation Company on March 10, 1932. In
paragraph III of the March 10, 1932, easement contract,
the right to use water for "domestic" and "stock watering
purposes" was retained expressly by the Prison System.
The right to purchase water for irrigation purposes from
the irrigation company was expressly mentioned. There-
fore, the riparian rights appurtenant to the land then
owned, if any, were not contracted away or conveyed.

Honorable George Beto, page 2 (C-229)

The rule is well established that rights appurtenant to land grants are governed by the law of the sovereign when the grants were made. State v. Valmont Plantations, 163 Tex. 381, 355 S.W.2d 502 (1962), Luttes v. State, 159 Tex. 500, 324 S.W.2d 167 (1958).

The five original grants encompassing the prison property in Fort Bend County in question and the granting dates and authorities are as follows:

(1) William Morton 1-1/2 League - July 15, 1824, by the Government of the Mexican Nation.

(2) Jane Wilkins League - May 26, 1827, by the Government of the Mexican Nation.

(3) Jesse H. Cartwright League - March 31, 1828, by the Government of the Mexican Nation.

(4) Mills M. Battle League - May 31, 1827, by the Government of the Mexican Nation.

(5) Alexander Hodge League - April 12, 1828, by the Government of the Mexican Nation.

The Texas Supreme Court in the recent case of State v. Valmont Plantations, 163 Tex. 381, 355 S.W.2d 502 (1962), adopted the opinion of the San Antonio Court of Civil Appeals found at 346 S.W.2d 853. The Court thereby held that under the Mexican law prior to 1836 there was no right of irrigation from a perennial stream, unless a specific grant of water for irrigation was made by the Mexican Government. Oyster Creek was held to be a perennial stream in United States v. Certain Tracts of Land in Brazoria County, Tex., 93 F.Supp. 182 (S.D. Tex. 1950).

Examination of the translated copies of each of the above listed grants distinctly negatives any specific grant of water for irrigation. In fact, three of the grants specify that the grant is "without facilities for irrigation." The other two grants contain nothing which indicates that the land there involved was classified differently. Therefore, we conclude that no irrigation rights were granted by the sovereign, specifically or impliedly.

The Valmont case, supra, does not reach the matter of domestic and livestock use of water as a right appurtenant to the grant. There appears to be no dispute, however,

-1110-

that this use of water is consistent with Mexican law in force at the time the grants in question were made.

We believe this right to be analogous with the "natural" use of water by the proprietors of riparian land granted subsequent to the adoption of the Common Law in Texas. This use is limited to an amount reasonably necessary for domestic and livestock watering purposes. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733 (1905).

Article 115.1 (s) of the Texas Water Commission's Rules, Regulations and Modes of Procedure. (1964 Ed.) defines domestic use as follows:

> "(s) Domestic Use is the use of water by an individual, or by a family unit or household, for drinking, washing, culinary purposes, irrigation of a family garden and/or orchard when the produce is to be consumed by the family unit, and the watering of animals used in operating a farm or as food for the farm family."

An answer to the question of whether the irrigation contemplated by the Prison System could be classified as "domestic use" is suggested in El Paso County Water Improvement District No. 1 v. City of El Paso, 133 F.Supp. 894 (W.D. Tex. 1955) reversed in part on other grounds 243 F.2d 927 (C.C.A. 5th, 1957, cert. den. 355 U.S. 820). The court states on pages 909 and 910, the following:

> ". . . The general rule is that the riparian rights of a city, owning land along a river, are no different from the rights of an individual owner, and cannot be expanded to justify the use of such rights as a nucleus for supplying and selling water in great quantities to the general public in said municipality, . . . Such a withdrawal prima facie would seem to be out of focus with the principle of riparian equality. . . ."

Considering the Prison System analogous with the City of El Paso, supra, we hold that the proposed irrigation of some 400 acres of land for growing vegetable crops for use of inmates detained within the Prison System is inconsistent with the concept of "domestic use."

## S U M M A R Y

The lands comprising Central and Harlem Farms, Texas Prison System, located in Mexican Land Grants in Fort Bend County, Texas, have no appurtenant rights of irrigation from Oyster Creek.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By _Wayne R. Rodgers_
Wayne R. Rodgers
Assistant Attorney General

WRR:afg

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

James M. Strock
Edward R. Moffett
Linward Shivers
Paul Phy
Frank Booth

APPROVED FOR THE ATTORNEY GENERAL
By: Howard Mays